UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| UNIMEX CORPORATION, | ) | Case No. 20-12535-BFK |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| JOLENE E. WEE, | ) | |
| PLAN TRUSTEE OF UNIMEX | ) | |
| CORPORATION, | ) | Adversary Proceeding |
| | ) | No. 22-01051-BFK |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| YANGZHOU PUTIAN | ) | |
| SHOEMAKING CO., LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND
ORDER GRANTING DEFENDANT'S
MOTION TO STRIKE EXPERT REPORT
AND PROHIBIT OPINION TESTIMONY**

This matter comes before the Court on the Defendant's Motion to Strike Expert Report and Prohibit Opinion Testimony. Docket No. 31. The Plaintiff filed an Opposition. Docket No. 33. The Court heard the parties' arguments on April 16, 2024. For the reasons stated below, the Court will grant the Defendant's Motion.

**Undisputed Facts**

The Court finds that, for purposes of this Motion, the following facts are not disputed.

*A. Unimex Corporation.*

1

1. Unimex Corporation ("Unimex") is a Virginia corporation. It is owned 100% by Weiwei Jian ("Mr. Jian"). Case No. 20-12535-BFK, Docket No. 35, p. 36.

2. Unimex is in the business of selling footwear on a wholesale basis to retailers and to governmental entities.

3. Defendant Yangzhou Putian Shoemaking Co., Ltd. ("YPS") is Unimex's primary (if not sole) supplier of footwear. YPS is owned by Mr. Jian's parents.

4. On November 16, 2020, Unimex filed a Voluntary Petition under Subchapter V of Chapter 11 with this Court. *Id*. at Docket No. 1.

5. Ms. Wee was appointed as the Subchapter V Trustee. *Id.* at Docket No. 8.

6. On April 5, 2021, the Court confirmed a Plan of Reorganization in the case. *Id*. at Docket No. 77. The Plan was not a liquidating plan. Rather, the Plan contemplated that Unimex would continue as a going concern. The Plan required Unimex to pay $125,750 to its unsecured, nonpriority creditors in six semi-annual installments. *Id*. at Docket No. 69, p. 10. YPS agreed to withdraw its proof of claim, in the amount of $792,222.45, which caused the return to the creditors to be approximately 11% on their claims. *Id*. at n. 3.

7. The Order Confirming the Plan appointed Ms. Wee as the Plan Trustee, with the power to bring avoidance actions for the benefit of the creditors. *Id*. at Docket No. 77, pp. 3-4.

B. *The Stock Redemption Agreement.*

8. On or about January 1, 2016, Unimex and YPS entered into a Stock Redemption Agreement ("the SRA"). At the time, YPS was a shareholder in Unimex.

9. Under the SRA, Unimex agreed to redeem 8,000 shares of Common Stock in exchange for a payout of $475,000.00. Case No. 22-01051-BFK, Docket No. 1, Compl. Ex. A. The Redemption Price was to be paid as follows:

| | |
|---|---|
| $100,000.00 | December 31, 2016 |
| $100,000.00 | June 30, 2017 |
| $150,000.00 | December 31, 2017 |
| $125,000.00 | June 30, 2018 |

*Id.* at Compl. Ex. A, p. 2.

10. The Complaint alleges that the payments under the SRA (for purposes hereof, "the Transfers") were made as follows:

| | |
|---|---|
| $100,000.00 | December 27, 2016 |
| $100,000.00 | January 9, 2017 |
| $275,000.00 | February 21, 2017 |

*Id.* at Compl. ¶ 8.

C. *Mr. Stryker's Report.*

11. The Trustee proffered Charles H. Stryker, CFA ("Mr. Stryker") as her solvency expert. YPS does not question Mr. Stryker's credentials as an expert on solvency.

12. Mr. Stryker performed a balance sheet test of Unimex, on or near the dates of the Transfers, using the "fair value" standard. Docket No. 31, Ex. A, p. 2. He defined fair value as "the amount at which the aggregate assets of the company would change hands between a willing buyer and a willing seller, within a commercially reasonable period of time, each having reasonable knowledge of the relevant facts, neither being under any compulsion to act, with equity to both." *Id.*

13. For purposes of evaluating Mr. Stryker's opinions on solvency, the Court looks to the Adjusted Balance Sheets attached to his Report as Appendix A-2, A-3, and A-4, which are the

company's Balance Sheets, as of December 31, 2016, January 10, 2017, and February 22, 2017, adjusted by Mr. Stryker as described below.[1]

14. The statements of equity, original to the company, and as adjusted by Mr. Stryker, are as follows:

December 31, 2016, Adjusted Balance Sheet

Debtor's Stated Equity: $404,152.21

Equity as Adjusted: ($265,647.64)

January 10, 2017, Adjusted Balance Sheet

Debtor's Stated Equity: $410.120.48

Equity as Adjusted: ($247,057.52)

February 22, 2017, Adjusted Balance Sheet

Debtor's Stated Equity: $456,719.49

Equity as Adjusted: ($228,936.34)

*Id.* at Ex. A, App. A-2, A-3, A-4.

15. The differences between the Debtor's Stated Equity and the Equity as Adjusted in each case were the results of the application of three adjustments: (a) Mr. Stryker subtracted $140,000.00 as a contingent liability for Unimex's debt to Falcon Path (described below); (b) Mr. Stryker used the Debtor's inventory reports, as opposed to the inventory numbers reported on Unimex's balance sheets; and (c) Mr. Stryker applied a 50% discount to the inventory numbers "to reflect liquidation value of the inventory." *Id.* at App. A-2, A-3, A-4.

16. The Falcon Path liability arose out of the Debtor's sale of goods to Falcon Path for $140,000.00. In July 2015, Falcon Path complained that the goods were nonconforming.

---

[1] The Court attaches the three Adjusted Balance Sheets to this Opinion as **Exhibit A.**

4

Falson Path initiated arbitration proceedings against Unimex. Falcon Path later obtained an arbitration award, which was reduced to a judgment of over $400,000.00, including the initial sales price, the costs to cover and its fees and expenses.

  *D.  The Jian Adversary Proceeding.*

  17. The Trustee also filed an adversary proceeding against Mr. Jian. *Wee, Plan Trustee v. Jian*, Adv. Pro. 22-01058-BFK.

  18. The *Jian* adversary proceeding went to trial before the undersigned on March 1, 2024. The Court qualified Mr. Stryker as an expert witness on solvency, and heard his testimony, both on direct and cross-examination. Overall, the Court found Mr. Stryker to be credible as a witness.

  19. The parties advised the Court at the conclusion of Mr. Stryker's testimony that they had reached a settlement. The Court continued the case for a status hearing on April 23, 2024.

  20. On April 23, 2024, the Court approved the proposed settlement pursuant to Bankruptcy Rule 9019, as a reasonable exercise of the Trustee's business judgment. Case No. 20-12535-BFK, Docket No. 220.

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(H) (proceedings to determine, avoid or recover fraudulent conveyances).

  I. **Va. Code § 55.1-401 and Solvency.**

The Trustee's Complaint alleges that the Transfers made pursuant to the SRA, which were outside of the two-year reach back period under Bankruptcy Code Section 548(a), are constructively fraudulent under Virginia Code Section 55.1-401 (which is a recodification of Virginia Code Section 55-81). The Trustee has standing to bring this action on behalf of the creditors under Bankruptcy Code Section 544(b). 11 U.S.C. § 544(b). The Trustee has the burden of proof on the issue of insolvency. *Gold v. Deangelo (In re Vaughn),* 2023 WL 6131468, at *4 (Bankr. E.D. Va. Sept. 19, 2023); *In re Bay Vista of Virginia, Inc.*, 428 B.R. 197, 221 (Bankr. E.D. Va. 2010).

Virginia Code Section 55.1-401 provides:

Every gift, conveyance, assignment, transfer, or charge that is not upon consideration deemed valuable in law, or that is upon consideration of marriage *by an insolvent transferor or by a transferor who is thereby rendered insolvent,* shall be void as to creditors whose debts were contracted at the time such gift, conveyance, assignment, transfer, or charge was made but shall not, on that account merely, be void as to creditors whose debts have been contracted, or as to purchasers who have purchased, after such gift, conveyance, assignment, transfer, or charge was made. Even though it is decreed to be void as to a prior creditor, because voluntary or upon consideration of marriage, it shall not, for that cause, be decreed to be void as to subsequent creditors or purchasers.

Va. Code § 55.1-401 (emphasis added).

The Trustee agrees that she needs to prove insolvency both on the date that the parties entered into the SRA (January 1, 2016), *and* the dates of the three Transfers.[2] For purposes of this Opinion, the Court will focus on the dates of the three Transfers.

The test for insolvency under Va. Code § 55.1-401 is a balance sheet test. *In re Fraley*, 2018 WL 1568527, at *2 (Bankr. W.D. Va. Mar. 28, 2018); *In re Tarangelo*, 378 B.R. 128, 137-38 (Bankr. E.D. Va. 2007); *Hudson v. Hudson*, 455 S.E.2d 14, 17 (Va. 1995) ("A debtor is

---

[2] The Trustee needs to avoid the SRA as a voluntary conveyance because under Virginia law, "paying or securing a legally enforceable antecedent debt is a conveyance supported by consideration." *Grayson v. Westwood Buildings L.P.,* 859 S.E.2d 651, 669 (Va. 2021).

6

insolvent, within the meaning of Code § 55–81, when he has insufficient property to pay all his debts.")[3] In support of her case, the Trustee has proffered the expert testimony of Mr. Stryker.

## II.   Federal Rule of Evidence 702 and Daubert.

Federal Rule of Evidence 702, effective as of December 1, 2023, provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court *that it is more likely than not* that:

a. the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
b. the testimony is based on sufficient facts or data;
c. the testimony is the product of reliable principles and methods; and
d. the expert reflects *a reliable application of the principles and methods to the facts of the case.*

Fed. R. Evid. 702 (emphasis added).

The first italicized phrase makes it clear that the standard to be applied is a preponderance ("more likely than not"). The second phrase reminds trial courts of their essential gatekeeping function. *See id.* at Advisory Comm. Notes (2023 Amendments).

Under Rule 702, expert testimony must be both reliable, and must "fit," or assist the trier of fact on one or more disputed issues in the case. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993). In *Daubert,* the Supreme Court suggested four guideposts for the reliability analysis: (1) whether the expert's theory or technique "can be (and has been) tested;" (2) whether the theory or technique has been subjected to peer review and publication; (3) "the known or potential rate of error" inherent in the theory or technique; and (4) whether the expert's methodology is generally accepted in his or her field of expertise. *Id*. at 593-94.  In *Sardis v.*

---

[3] The same is true under Bankruptcy Code Section 548. Section 548(a)(1)(B)(I) is a balance sheet test, under which the Court compares the Debtor's assets and liabilities at a fair valuation at the time of the transfer. 11 U.S.C. § 101(32); *Gold v. Deangelo (In re Vaughn),* 2023 WL 6131468, at *5 (Bankr. E.D. Va. Sept. 19, 2023); *In re Randolph Hosp., Inc.,* 644 B.R. 446, 460 (Bankr. M.D.N.C. 2022); *In re Stephenson,* 2012 WL 4680703, at *3 (Bankr. E.D.N.C. Oct. 1, 2012); *In re Ryan,* 472 B.R. 714, 727 (Bankr. E.D. Va. 2012).

*Overhead Door Corp.*, 10 F.4th 268 (4th Cir. 2021), the Fourth Circuit reminded trial courts of the importance of the gatekeeping function under Rule 702. The Fourth Circuit held that a trial court "must satisfy itself that the proffered testimony is relevant to the issue at hand, for that is a *precondition* to admissibility," and that "the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Id*. at 282 (emphasis in original) (internal citation omitted).

The Court turns to the two critical adjustments in Mr. Stryker's Report.[4]

A.  *The Falcon Path Contingent Liability.*

In July 2015, Falson Path asserted that the goods it received from Unimex were nonconforming. This later turned into an arbitration award and a judgment in the amount of over $400,000.00. YPS argues that Mr. Stryker's Report is flawed because he did not engage in a probability analysis, that is, an estimation of the probability of a liability multiplied by the likely outcome. The Trustee responds by arguing that the goods either were conforming or not, and that in the end, the liability exceeded $400,000.00, which included Falcon Path's cover costs and litigation fees.

The Court finds that Mr. Stryker's assumption of a $140,000.00 contingent liability on each of the Transfer dates is reasonable. This can be the subject of cross-examination. The Court will decline to strike this portion of Mr. Stryker's Report.

B.  *The 50% Discount of the Inventory's Value.*

---

[4] YPS does not take issue with Mr. Stryker's second adjustment, the use of Unimex's inventory reports, as opposed to the inventory numbers stated on its Balance Sheets. The Court agrees that "company records and statements by company personnel are types of data reasonably relied upon by accountants, and opinions based on those types of information are typically admissible…." *In re Blackjewel, L.L.C.*, 643 B.R. 128, 36 (Bankr. S.D.W. Va. 2022) (quoting *Mac Sales v. E.I. Dupont De Nemours & Co.*, 1992 WL 396864, at *5 (E.D. La. Dec. 18, 1992)).

YPS next takes issue with the fact that Mr. Styker discounted Unimex's inventory by 50% "to reflect liquidation value of the inventory after the reduction to reflect the inventory report." Docket No. 31, Ex. A, App. A-2, A-3, A-4 (Note C). The Court agrees - this is simply a flawed assumption. First, Unimex was not being liquidated; it was always a going concern, particularly on the dates of the three Transfers. Nor was Unimex on its "deathbed." *See Matter of Taxman Clothing*, 905 F.2d 166, 170 (7th Cir. 1990) ("We grant that going-concern value is not the proper standard if the business is 'on its deathbed'") (internal citation omitted); *In re Heilig-Myers Co.,* 328 B.R. 471, 477 (E.D. Va. 2005) ("A debtor lies on its deathbed where the debtor 'is in a precarious financial condition so that 'liquidation was imminent when the petition was filed.'") (internal citation omitted). To the contrary, this Court confirmed Unimex's Plan with the company as a going concern, not as a liquidation. Unimex is still selling shoes to this day.[5]

Further, Mr. Stryker provides no substantiation for a 50% discount rate. Mr. Stryker asserts that this business was closely held, that YPS was owned by Mr. Jian's parents, and that there was no fixed supply contract upon which a buyer of the business could rely on in evaluating the value of the business a going concern. This is true, but it still is not clear to the Court why a 50% discount, as opposed to, say, a 25% or a 30% discount, is the correct number. Admittedly, real-world examples of wholesalers selling their entire inventory in bulk when they're *not* going out of business must be relatively rare and difficult to find, but this just proves

---

[5] Mr. Stryker testified in his deposition:

> Q. Help me understand what you mean by, it's not a liquidator's analysis? You – you premised your report in this case on liquidation value, correct?
> A. Yes, but my expertise is finance - is financial….

Def's. Mot., Ex. E, Tr. p. 129:16-19.

9

the first point, above, that the use of liquidation value is inappropriate where the Debtor continues as a going concern.[6]

In essence, Mr. Stryker's use of the 50% discount rate represents what Judge Kahn in the *Blackjewel* case called "*ipse dixit*" ("something asserted but not proved"). 643 B.R. at 138, n. 5. In *Daubert* terms, the Court finds that Mr. Stryker's use of the 50% discount rate for the inventory cannot be tested, nor can the Court discern whether the use of this particular discount rate can be subjected to a known or potential rate of error.

The Court, therefore, will grant the Defendant's *Daubert* Motion.

C. Does it Make a Difference?

The question then becomes: does it make a difference? That is, when the Court disallows the 50% inventory discount, was Unimex balance-sheet insolvent on the relevant dates? The answer is that it does. In the case of the December 31, 2016, Adjusted Balance Sheet, Mr. Stryker took Unimex's stated Balance Sheet inventory of $850,775.00 and reduced it by $208,825.00, for a net of $641,950.00. He then discounted that number by 50%, or $320,975.00, thereby arriving at a conclusion of a negative ($265,647.79).

Similarly, for the Adjusted Balance Sheet of January 10, 2017, Mr. Stryker reduced Unimex's Balance Sheet inventory number of $831,051.00 by $203,305.00, for a net inventory

---

[6] Mr. Stryker testified in his deposition:

> Q. Now, you mentioned that you adjusted the value of the inventory on the relevant dates. How did you determine the amount of that adjustment?
> A. Well, as I – I listed about four or five considerations that go into that number. So in my view, and based on my experience in having worked at American Appraisal, which was a hard asset firm, my experience indicates that the generalization of liquidation value is about half of what the going concern value is. So it's about a fifty percent haircut. And the items I identified are significant, and they track low at fifty percent.

Def's Mot., Ex. E, Tr. p. 103:4-14.

of $627,746.00. He then applied a 50% discount to that number, or $313,873.00. This amount exceeds the negative equity conclusion of ($247,057.52).

And for the Adjusted Balance Sheet of February 22, 2017, Mr. Stryker reduced Unimex's Balance Sheet inventory number of $916,888.66 by $174,423.00, for a net inventory of $742,456.66. He then applied a 50% discount to that amount, or $371,232.83. Again, this amount exceeds the negative equity conclusion of ($228,936.34). In each of the three cases, the negative equity conclusion is exceeded by the amount of the 50% inventory discount.

The Court, therefore, will exclude Mr. Stryker's testimony.

## Conclusion

It is therefore **ORDERED**:

A.  The Defendant's Motion to Strike Expert Report and Prohibit Opinion Testimony (Docket No. 31) is granted. The Court will exclude Mr. Stryker's expert testimony on Unimex's alleged insolvency.

B.  The Clerk will mail copies of this Memorandum Opinion and Order, or will provide cm-ecf notice of its entry, to the parties below.

Date: May 10 2024

Alexandria, Virginia

/s/ Brian F Kenney
The Honorable Brian F. Kenney
United States Bankruptcy Judge

Entered On Docket: May 13 2024

Copies to:

Dylan G. Trache
101 Constitution Avenue, N.W., Suite 900
Washington, DC 20001
*Counsel for Plaintiff*

Bradley David Jones
1775 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006
*Counsel for Defendant*

EXHIBIT A

**APPENDIX A-2**
**Unimex Corporation**
**Adjusted Balance Sheet**

|  | Balance Sheet 12/31/2016 | Adjustments | Fair Value |
|---|---:|---:|---:|
|  | $ | $ | $ |
| **ASSETS** |  |  |  |
| **Current Assets** |  |  |  |
| Checking/Savings | 90,567.92 |  | 90,567.92 |
| Accounts Receivable | 9,480.28 |  | 9,480.28 |
| Inventory | 850,775.00 | 208,825.00 **(b)** | 320,975.00 |
|  |  | 320,975.00 **(c)** |  |
| Other Current Assets | 159,109.44 |  | 159,109.44 |
| **Total Current Assets** | 1,109,932.64 |  | 580,132.64 |
| Fixed Assets | 4,340.00 |  | 4,340.00 |
| Other Assets | 8,584.00 |  | 8,584.00 |
| **TOTAL ASSETS** | **1,122,856.64** |  | **593,056.64** |
| **LIABILITIES & EQUITY** |  |  |  |
| **LIABILITIES** |  |  |  |
| **Current Liabilities** |  |  |  |
| Accounts Payable | 194,594.23 |  | 194,594.23 |
| Credit Cards | 49,471.26 |  | 49,471.26 |
| Other Current Liabilities | 474,638.94 |  | 474,638.94 |
| **Total Current Liabilities** | 718,704.43 |  | 718,704.43 |
| Falcon Path Contingent Liability |  | 140,000.00 **(a)** | 140,000.00 |
| **TOTAL LIABILITIES** | 718,704.43 |  | 858,704.43 |
| Equity | 404,152.21 |  | (265,647.79) |
| **TOTAL LIABILITIES & EQUITY** | **1,122,856.64** |  | **593,056.64** |

Note: (a) To reflect Falcon Path Contingent Liability.
(b) To correct the inventory to reflect the detailed inventory report.
(c) To reduce the inventory by 50% to reflect liquidation value of the inventory after the reduction to reflect the inventory report.

**APPENDIX A-3**
**Unimex Corporation**
**Adjusted Balance Sheet**

|  | Balance Sheet 1/10/2017 | Adjustments | Fair Value |
|---|---:|---:|---:|
| **ASSETS** | $ | $ | $ |
| **Current Assets** | | | |
| Checking/Savings | 113,200.51 | | 113,200.51 |
| Accounts Receivable | 11,566.31 | | 11,566.31 |
| Inventory | 831,051.00 | 203,305.00 **(b)** | 313,873.00 |
| | | 313,873.00 **(c)** | |
| **Fixed Assets** | | | |
| Other Current Assets | 146,252.25 | | 146,252.25 |
| **Total Current Assets** | 1,102,070.07 | | 584,892.07 |
| Fixed Assets | 4,340.00 | | 4,340.00 |
| Other Assets | 8,584.00 | | 8,584.00 |
| **TOTAL ASSETS** | 1,114,994.07 | | 597,816.07 |
| **LIABILITIES & EQUITY** | | | |
| **LIABILITIES** | | | |
| **Current Liabilities** | | | |
| Accounts Payable | 197,244.21 | | 197,244.21 |
| Credit Cards | 56,850.31 | | 56,850.31 |
| Other Current Liabilities | 450,778.07 | | 450,778.07 |
| **Total Current Liabilities** | 704,872.59 | | 704,872.59 |
| Falcon Path Contingent Liability | | 140,000.00 **(a)** | 140,000.00 |
| **TOTAL LIABILITIES** | 704,872.59 | | 844,872.59 |
| Equity | 410,120.48 | | (247,057.52) |
| **TOTAL LIABILITIES & EQUITY** | 1,114,993.07 | | 597,815.07 |

Note: (a) To reflect Falcon Path Contingent Liability.
   (b) To correct the inventory to reflect the detailed inventory report.
   (c) To reduce the inventory by 50% to reflect liquidation value of the inventory after the reduction to reflect the inventory report.

**APPENDIX A-4**

**Unimex Corporation**

**Adjusted Balance Sheet**

| | Balance Sheet 2/22/2017 | Adjustments | Fair Value |
|---|---:|---:|---:|
| **ASSETS** | $ | $ | $ |
| **Current Assets** | | | |
| Checking/Savings | 4,055.01 | | 4,055.01 |
| Accounts Receivable | 69,400.38 | | 69,400.38 |
| Inventory | 916,888.66 | 174,423.00 **(b)** | 371,232.83 |
| | | 371232.83 **(c)** | |
| Other Current Assets | 39,595.75 | | 39,595.75 |
| Total Current Assets | 1,029,939.80 | | 484,283.97 |
| **Fixed Assets** | | | |
| Other Assets | 8,584.00 | | 8,584.00 |
| **TOTAL ASSETS** | 1,038,523.80 | | 492,867.97 |
| **LIABILITIES & EQUITY** | | | |
| **LIABILITIES** | | | |
| **Current Liabilities** | | | |
| Accounts Payable | 228,175.54 | | 228,175.54 |
| Credit Cards | 34,687.10 | | 34,687.10 |
| Other Current Liabilities | 318,941.67 | | 318,941.67 |
| Total Current Liabilities | 581,804.31 | | 581,804.31 |
| Falcon Path Contingent Liability | | 140,000.00 **(a)** | 140,000.00 |
| **TOTAL LIABILITIES** | 581,804.31 | | 721,804.31 |
| **Equity** | 456,719.49 | | (228,936.34) |
| **TOTAL LIABILITIES & EQUITY** | 1,038,523.80 | | 492,867.97 |

Note: (a) To reflect Falcon Path Contingent Liability.

(b) To correct the inventory to reflect the detailed inventory report.

(c) To reduce the inventory by 50% to reflect liquidation value of the inventory after the reduction to reflect the inventory report.